J-S35034-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RICHARD C. BOWMAN, III | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| R.C. BOWMAN, INC. | : | No. 415 MDA 2021 |

Appeal from the Judgment Entered April 12, 2021
In the Court of Common Pleas of Clinton County Civil Division at No(s):
1576-2019

| | | |
|---|---|---|
| R.C. BOWMAN, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD C. BOWMAN, III | : | |
| | : | |
| Appellant | : | No. 416 MDA 2021 |

Appeal from the Order Entered December 4, 2020
In the Court of Common Pleas of Clinton County Civil Division at No(s):
2019-01690

BEFORE:  OLSON, J., KUNSELMAN, J., and PELLEGRINI, J.*

MEMORANDUM BY PELLEGRINI, J.:        **FILED: JANUARY 14, 2022**

Richard C. Bowman, III (Bowman III) appeals from the order entered in

the Court of Common Pleas of Clinton County (trial court) after a non-jury trial

at the above docket numbers.  This dispute, one of many, flows from his

removal as president, his separation from R.C. Bowman, Inc. (R.C. Bowman)

---

* Retired Senior Judge assigned to the Superior Court.

and his conducting of a new business, Bowman Excavating, while he still owned one-third of the shares in R.C. Bowman.

In this dispute, he argues that the court erred (1) in permanently enjoining him under Section 5303 of the Trade Secrets Act[1] from contacting any customers on the customer list of R.C. Bowman identified as Exhibit 11; and (2) in finding that he, as a shareholder, was not entitled to inspect the books and records of R.C. Bowman where it found that he provided a proper purpose for the inspection. After our careful review, we reverse.

We take the following pertinent factual background and procedural history from the trial court's December 4, 2020 opinion and our independent review of the record.

## I.

### A.

The trial court summarized the following "unfortunate history between the parties." (Trial Court Opinion, 12/04/20, at 3).

> R.C. Bowman, Inc. was incorporated on April 19, 1999 with Richard C. Bowman, Jr., Robert K. Bowman, and Richard C. Bowman III each having a one-third (1/3) interest in said corporation. Richard C. Bowman, Jr. is the father of Richard C. Bowman III and Robert K. Bowman. Robert K. Bowman and

---

[1] Section 5503 provides, in pertinent part: "Actual or threatened misappropriation may be enjoined. Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional reasonable period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation." 12 Pa.C.S. § 5503(a).

Richard C. Bowman III are twin brothers. Richard C. Bowman III had been president of the Corporation since its founding in 1999. An annual shareholders' meeting was held on February 8, 2019. Richard C. Bowman, III did not attend that shareholders' meeting. At the shareholders' meeting on February 8, 2019, Richard C. Bowman III was removed as president of the Corporation and as a Board [] Director. Richard C. Bowman, III remained as an employee of the Corporation until Monday, March 23, 2019 when said employment was terminated. During the time period from February 8, 2019 through Friday, March 22, 2019, the parties were involved in negotiations regarding the sale of Richard C. Bowman, III's interest of said Corporation.

On Friday, March 22, 2019, Richard C. Bowman, III notified Robert K. Bowman, through counsel, that Richard C. Bowman, III no longer desired to continue with any negotiation concerning the sale of Richard C. Bowman, III's one-third (1/3) ownership in the Corporation. As noted above, the Corporation terminated Richard C. Bowman, III's employment the next business day, Monday, March 25, 2019. On April 8, 2019, Richard C. Bowman, III established a new Corporation, named Richard C. Bowman, III, Inc., and on May 13, 2019, Richard C. Bowman, III, Inc. registered the fictitious name of Bowman Excavating, Paving and Concrete. Since May 13, 2019, Richard C. Bowman, III, Inc., trading as Bowman Excavating, Paving and Concrete has conducted a business in direct competition with R.C. Bowman, Inc. Richard C. Bowman, III, Inc. has hired individuals who formerly worked for R.C. Bowman, Inc.; those employees being William Weaver, Vince Watson, Russell Mark, and Craig Boob. Richard C. Bowman, III had also solicited Leslie Stewart, a current employee of R.C. Bowman, Inc., to work for the new Corporation. The new Corporation has also performed work for clients of R.C. Bowman, Inc,; those clients being Central Pennsylvania Auto Auction, city of Lock Haven, Deb O'Connor, Grant Miller, and Joseph Hazel. The new Corporation offices are located at a building occupied by Maxwell Trucking Excavating, Inc., which is a direct competitor of R.C. Bowman, Inc.

(Trial Ct. Op., at 3-4).

**B.**

Shortly after being removed from the corporation, due to his concern that the corporation was paying the personal expenses of the current president, Rob Bowman, as well as concerns about significant changes in the corporation, including numerous people in management positions leaving, sizeable raises being given and lack of current business, Bowman III, as a shareholder, sent Rob Bowman a series of letters seeking to inspect R.C. Bowman's records  He sought to inspect the corporation's "monthly accounts receivable, monthly accounts payable, work backlog report, copies of all checks written from Bowman, Inc.'s accounts, sales agreements for all assets sold and proof of payment for same, all cash receipts and deposits, all credit card statements, complete payroll reports and a detailed Verizon Phone Bill." Rob Bowman denied the requests on behalf of R.C. Bowman and on November 18, 2019, Bowman III commenced litigation at docket number 1579-2019 (Corporate Records Action) seeking to have the court compel R.C. Bowman to produce the records for inspection.

On December 12, 2019, R.C. Bowman filed a complaint against Bowman III setting forth five counts (Trade Secrets Action):  Count I:  violation of Pennsylvania's Uniform Trade Secrets Act (PUTSA);[2] Count II:  Breach of fiduciary duty; Count III:  Equitable relief; Count IV:  Conversion; and Count

---

[2] 12 Pa.C.S. §§ 5301-5308.

V: Replevin. As part of the Trade Secrets Action, R.C. Bowman filed a petition seeking entry of preliminary injunction (Petition) requesting that Bowman III be enjoined from "soliciting [R.C. Bowman's] customers" and "from operating his business through the use of [R.C. Bowman's] trade secrets," which included the corporation's customer list. After a hearing, the court denied the Petition because there was not "sufficient proof of a threat of immediate and irreparable harm."

The trial court consolidated the parties' actions for trial. A two-day non-jury trial commenced on October 15, 2020.[3]

## C.

At trial, relevant to the Trade Secrets Action, it was established that Bowman III previously had access to R.C. Bowman's information, including its customers, which was maintained on the accounting software program, ComputerEase, but that R.C. Bowman did not maintain a specific customer list. However, Bowman III had no access to ComputerEase after February 8, 2019, when he was removed as president. The only list to which he had access after February 8, 2019, was a 2016-2017 snow removal customer list

---

[3] We provide only those trial facts pertinent to our review of Bowman III's issues in this appeal: (1) whether the trial court erred in enjoining him from contacting any entity listed on the customer list admitted by R.C. Bowman as Exhibit 11; and (2) whether the trial court erred in denying his action to compel R.C. Bowman to allow inspection of corporate records where the court found he established a proper purpose.

that was on a R.C. Bowman computer he had removed upon his termination. This snow removal list was not entered as an exhibit or examined at trial.

In anticipation of litigation, R.C. Bowman created a spreadsheet containing a customer list of its larger repeat customers and entered it as Exhibit 11 at the preliminary injunction hearing and at trial. It did not seek a protective order from the trial court. Bowman III did not see Exhibit 11 prior to litigation since it did not exist prior to that time.

Testimony established that 90 percent of R.C. Bowman's jobs, including 100 percent of its large jobs, are obtained through a competitive bidding process in which its competitors are made aware of the corporation's bid and which work it is awarded. The names of successful bidders are often made public in those projects.

R.C. Bowman does not provide training to its employees related to confidentiality, and its employee handbook contains only boilerplate terms and does not identify what it deems to be confidential. Andrea Kleckner, the office manager in charge of the day-to-day operations of R.C. Bowman, including accounts receivable, accounts payable and the corporation's financials, testified that she was never informed that customer names were to be kept secret, and that she only became aware of the confidentiality provision in her contract after this litigation began. Although Rob Bowman testified that Ms. Kleckner created Exhibit 11, she stated that she did not recall seeing it until her September 23, 2020 deposition.

Other former R.C. Bowman employees who are employed by the corporation's competitors testified that they are not subject to confidentiality agreements. For example, Jeff Wert testified that he had access to the R.C. Bowman computer network, including ComputerEase, that he was aware of hundreds of R.C. Bowman's customer names, that he was never told that they are secret, and that he commonly shared the names of customers with other people while he was employed at R.C. Bowman.

R.C. Bowman's current estimator and project manager, Don Stauffer, testified that he is employed by DLS Services Corp. and his contract with R.C. Bowman does not contain confidentiality or non-compete provisions. R.C. Bowman's equipment contains its name and logo for advertising purposes and is regularly on customers' work sites.

Rob Bowman, R.C. Bowman's current president, does not have a contract preventing him from disclosing information about R.C. Bowman, and the names of R.C. Bowman customers are regularly shared with third parties. He admitted that he wants Bowman III to stay away from R.C. Bowman's customers despite Bowman III not being subject to a non-compete agreement. He testified that R.C. Bowman protects its trade secrets by limiting access to information, password protection and ensuring that employees only are trained in their operations division.

Ms. Kleckner testified about measures taken by the company to protect trade secrets, including limiting which employees have access to specified

sections of the file server and password protections. Employees are required to review and sign that they have read the employee handbook confidentiality policy that unauthorized disclosures constitute employee misconduct.

Rob Bowman stated that he reviewed documents produced by Bowman III's counsel from the desktop computer Bowman III had removed from his R.C. Bowman office. The documents included employee contracts, the snow removal customer list, financial documents, material price lists, an equipment list, employee profit sharing data and computer passwords, all which Rob Bowman regarded as confidential trade secrets. He testified that he had no knowledge that Bowman III actually disclosed proprietary information related to R.C. Bowman to anyone.

Bowman III testified he knew everything about the operation of R.C. Bowman, including that it has three separate divisions, because of his previous role as president. He stated that R.C. Bowman installed ComputerEase accounting software and HeavyBid bidding software under his leadership, and that R.C. Bowman engaged in bidding for construction contracts in a competitive market.

Bowman III admitted he removed many items from his R.C. Bowman office, including the desktop computer connected to the R.C. Bowman file server that he used as president, which still was in his possession at the time of trial. He stated that his new corporation is a direct competitor of R.C. Bowman, seeking the same work, with the same three divisions and bidding

on the same contracts. He identified R.C. Bowman's Exhibit 11 as a list of R.C. Bowman customers printed out from the ComputerEase accounting software, that his new company had completed work for some of the customers on the list, and that he intended to continue to provide work to the customers but only if they reached out to him. He admitted that some former employees of R.C. Bowman had been hired by his new corporation.

**D.**

Relevant to the Corporate Records Action, Bowman III testified that he filed his complaint to secure the same financial information to which he had access when he was president. He admitted that as a shareholder, he already was receiving monthly financial reports and identified R.C. Bowman Exhibit 24 as 193 pages of those reports. These statements are not audited monthly by R.C. Bowman's accountant and Rob Bowman testified that he did not know if a financial audit for R.C. Bowman was performed in 2019. Although Bowman III testified at trial that the information he seeks to access will not provide him with a competitive advantage for his new corporation, at his deposition, he stated, "there is a possibility" that he could use R.C. Bowman's financial data to gain a competitive advantage.

Rob Bowman testified that the information that R.C. Bowman provides to Bowman III monthly is the same as what it provides to its bank. Ms. Kleckner stated that in the eight years of her employment, confidential financial information has only been disclosed for banking, accounting and

bonding purposes. According to Rob Bowman, R.C. Bowman's financial condition is stronger than ever and shareholders' equity between December 31, 2018, and August 2020 increased by over $1.1 million. He stated that if Bowman III had complete access to the financial records that he sought in his complaint, he would drive R.C. Bowman out of business since its advantage in the marketplace is due to its careful control of costs. According to Don Stauffer, who prepares R.C. Bowman's bids, if a competitor had knowledge of the cost structure of R.C. Bowman, it could use the information to match R.C. Bowman's bid.

As to Bowman III's claims that R.C. Bowman pays for the cell phones of Rob Bowman's family and for Rob Bowman's personal vehicle, the trial court explained:

> Robert K. Bowman has admitted [that R.C. Bowman is paying for his wife and daughter's cell phones], but has also indicated that [his] wife manages the website, R.C. Bowman, Inc. and that the payment for the cell phone is compensation for said management …. Robert K. Bowman also admitted that a cell phone is provided to [his] daughter … but [he] indicates that this is also in lieu of payment for [her] mowing the grass at the office building of R.C. Bowman, Inc. Richard C. Bowman, III also alleges that Robert K. Bowman utilizes Corporate funds to provide Robert K. Bowman with a personal vehicle. Richard C. Bowman, III alleges that Robert K. Bowman has a vehicle that [he] utilizes as a personal vehicle and this vehicle is the only vehicle that is not decaled with the R.C. Bowman, Inc. label. The purpose of decaling all vehicles with the R.C. Bowman, Inc. label is to provide advertising for the Corporation. This [c]ourt finds that Richard C. Bowman, III has established a proper purpose for requesting access to the corporate records.

(Trial Ct. Op., at 6-7).

**E.**

On December 4, 2020, after a thorough briefing by the parties, the trial court entered a verdict in favor of R.C. Bowman in both the Corporate Records Action and Trade Secrets Action. In the Corporate Records Action (1579-2019), the court found that Bowman III did not offer credible evidence that R.C. Bowman "is floundering or experiencing financial or managerial difficulties." (Trial Ct. Op., at 8). Although it found that Bowman III's claim that R.C. Bowman is paying the personal expenses of Rob Bowman set forth a proper purpose for requesting access to the corporate records, the court then shifted the burden to R.C. Bowman to offer evidence of an improper purpose and concluded that R.C. Bowman did so. (***See*** Trial Ct. Op., 12/04/20, at 6-9).

In the Trade Secrets Action (1690-2019), the trial court entered the verdict based on the customer list at Exhibit 11 being a trade secret. It found, in pertinent part, that:

> Obviously, … most of the customers of R.C. Bowman, Inc. … are known outside the business. …
>
> * * *
>
> This [c]ourt finds … that the customers of R.C. Bowman, Inc. are [] known by employees and others involved in the company's business. This [c]ourt would note that R.C. Bowman, Inc. has advertisement placed on all corporation equipment which may be located at a customer's site.
>
> * * *

> ... R.C. Bowman did not require a confidentiality agreement with Richard C. Bowman, III ....
>
> * * *
>
> Some testimony was received concerning the effort by R.C. Bowman, Inc. in developing and implementing the software known as "ComputerEase" ... but the extent of the effort and the financial resources spent on this endeavor were not provided to this [c]ourt.
>
> R.C. Bowman, Inc. [] requests that Richard C. Bowman, III be prohibited from contacting customers ... of R.C. Bowman, Inc. A customer list is included in the statutory definition of "trade secret[.]" ... This [c]ourt acknowledges that an argument [] could be made that customers of R.C. Bowman, Inc. are not attempted to be maintained as a secret of R.C. Bowman, Inc. R.C. Bowman, Inc. personnel and equipment when onsite at a customer's property are easily identified due to labeling/decaling of the equipment of R.C. Bowman, Inc. However, if the customer's situs is located in a remote area, this may somewhat conceal this information from public view due to natural ... or manmade ... barriers preventing the sighting of R.C. Bowman, Inc. identifiers.
>
> Given the factors discussed above, this [c]ourt will issue a verdict enjoining Richard C. Bowman, III from contacting any customer contained on the customer list that was on the computer that Richard C. Bowman, III removed from the offices of R.C. Bowman, Inc. ...

(Trial Ct. Op., at 15-16). The trial court phrased the order in this matter slightly differently, directing that Bowman III "may not contact any entity listed on the 'customer list' admitted by R.C. Bowman['s] 'Exhibit 11' for the purposes of soliciting business for Richard C. Bowman, III, Inc. t/a Bowman Excavating, Paving and Concrete." (Order, 12/04/20, at 2). It made no specific finding that Bowman III misappropriated Exhibit 11.

The court denied all other claims by R.C. Bowman under the PUTSA, finding that "various employees know certain parts of all aspects of the business of R.C. Bowman," that employee lists, Bowman III's knowledge acquired at R.C. Bowman, and the cost of materials and bidding methods are not trade secrets. The court denied R.C. Bowman's request that Bowman III be enjoined from conducting a similar business. (**See** Trial Ct. Op., at 14-15).[4]

_____

[4] It also found in favor of R.C. Bowman on Counts IV-Conversion and V-Replevin, ordering Bowman III to return the personal property he took from R.C. Bowman. The court entered a verdict in favor of Bowman III on R.C. Bowman's actions for breach of fiduciary duty (Count II) and equitable relief (Count III) on the basis that the claims were preempted by the PUTSA. (**See** Trial Ct. Op. at 19-20); (Order, 12/04/20, at 2). It denied R.C. Bowman's request for attorney fees and monetary, compensatory and exemplary damages. (Order, 12/04/20, at 3).

On December 17, 2020,[5] Bowman III filed post-trial motions that the court denied on March 2, 2021. He timely appealed and complied with Rule 1925(b).[6] *See* Pa.R.A.P. 1925.

Bowman III raises six issues for our review that can be broadly classified as challenges to the court's finding that he violated the PUTSA by misappropriating the Exhibit 11 client list and its denial of his Corporate Records Action to inspect R.C. Bowman's books and records.

## II.

## A.

Generally, to establish a claim of misappropriation of trade secrets, a plaintiff employer must prove:

---

[5] On May 11, 2021, this Court directed Bowman III to show cause why this appeal should not be dismissed for his failure to preserve any issues for appellate review where his post-trial motions were filed more than ten days after the verdict was entered in violation of Rule 227.1. *See Chalkey v. Roush*, 805 A.2d 491 (Pa. 2002) (stating that pursuant to Pa.R.C.P. 227.1, post-trial motions must be filed within ten days of verdict to preserve claims for appeal). However, the ten-day period for filing post-trial motions does not begin to run until the opinion and order are mailed. *See U.S. Bank, N.A. v. Pautenis*, 118 A.3d 386 (Pa. Super. 2015). Here, Bowman III attached an envelope to his response to the rule to show cause indicating that the December 4, 2020 opinion and order were mailed on December 7, 2020. Hence, we will treat the post-trial motions as timely filed on December 17, 2020, thus preserving Bowman III's issues on appeal.

[6] R.C. Bowman also filed a post-trial motion for contempt for Bowman III's failure to return the personal property as ordered by the trial court. The court granted that motion, which is the subject of an appeal filed at docket number 417 MDA 2021.

(1) that there was a trade secret ...; (2) that it was of value to employer [owner] and important in the conduct of his business; (3) that by reason of discovery or ownership the employer had the right to the use and enjoyment of the secret; and (4) that the secret was communicated to the employee while he was in a position of trust and confidence under such circumstances as to make it inequitable and unjust for him to disclose it to others, or to make use of it himself, to the prejudice of his employer.

*Gruenwald v. Advanced Computer Applications, Inc.*, 730 A.2d 1004, 1012–13 (Pa. Super. 1999) (citation omitted, emphasis added).

Bowman III argues that the customer list introduced as Exhibit 11 was not a trade secret. (*See* Bowman III's Brief, at 35-40). He maintains that he was not subject to a confidentiality agreement, and that the evidence established that R.C Bowman made little attempt to keep the identity of its customers secret and failed to establish any independent economic value to the list. Finally, he maintains that by entering Exhibit 11 into evidence at both the preliminary injunction hearing and at trial, R.C. Bowman made the customer list available to all its competitors. (*See id.*).

Pursuant to the PUTSA, "trade secrets" are defined as:

Information, including a … customer list … that:

(1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

12 Pa.C.S. § 5302. The very concept of a "trade secret" is itself "somewhat nebulous." *Den–Tal–Ez, Inc. v. Siemens Capital Corporation*, 566 A.2d

1214, 1228 (Pa. Super. 1989). "Therefore, the decision of whether a particular compilation of customer data deserves protection as a trade secret necessarily must be made on a case-by-case basis." *Iron Age Corp. v. Dvorak*, 880 A.2d 657, 664 (Pa. Super. 2005) (internal citations omitted).

To determine whether information is protected as a trade secret, Pennsylvania courts consider:

> (1) the extent to which the information is known outside of the company's business; (2) the extent to which the information is known by employees and others involved in the company's business; (3) the extent of the measures taken by the company to guard the secrecy of the information; (4) the value of the information to the company and its competitors; (5) the amount of effort or money the company spent in developing the information; and (6) the ease or difficulty with which the information could be acquired or duplicated legitimately by others.

*Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010).[7]

Noting "the dim view that Pennsylvania precedent takes concerning extending trade secret protections to mere client lists[,]" we have observed:

> [O]ur Supreme Court has held that, under certain circumstances, customer lists and customer data may be entitled to protection as trade secrets. Furthermore, a trade secret may include compiled information which gives one business an opportunity to obtain an advantage over competitors. Nevertheless, customer lists are at the very periphery of the law of unfair competition. There is no legal incentive to protect the compilation of such lists because they are developed in the normal course of business anyway.

---

[7] "We are not bound by decisions of the federal courts, but we may rely on them for persuasive authority." *McEwing v. Lititz Mut. Ins. Co.*, 77 A.3d 639, 648 (Pa. Super. 2013) (citation omitted).

- 16 -

***Allied Envtl. Serv., Inc. v. Roth***, 222 A.3d 422, 429–30 (Pa. Super. 2019) (citations and quotation marks omitted).

Based on the foregoing, although a customer list may be considered a trade secret entitling an employer to injunctive relief,

> the Pennsylvania Supreme Court has opined that such protections are appropriate in businesses that lead to the establishment of "permanent and exclusive relationships" between "customers and salesmen." In that context, such customer lists "represent a material investment of employers' time and money" and "is highly confidential and constitutes a valuable asset" such that it is deserving of protection as a trade secret.

***Id.*** at 430 (citing ***Martucci's Home Equipment Corp. v. Martucci***, 136 A.2d 838, 842 (Pa. 1957)).

In this case, the trial court found that "most of the customers of R.C. Bowman, Inc. … are known outside the business" and that "the customers of R.C. Bowman, Inc. are [] known by employees and others involved in the company's business." (Trial Ct. Op., at 14, 15); (***See also*** N.T. Trial, 10/15/20, at 135-36, 140);(N.T. Trial, 10/16/20, at 95-96, 136). It noted that R.C. Bowman has advertisements on its equipment that would identify it if it were on a customer's property unless "the customer's situs is located in a remote area." (Trial Ct. Op., at 16); (***See*** N.T. Trial, 10/15/20, at 39-40). The trial court found that "no evidence was presented" about the value of any customer list or any other trade secret. (Trial Ct. Op., at 15). The "extent of the effort and financial resources spent" by R.C. Bowman on developing any trade secrets "were not provided" to the court. (***Id.***).

In addition to the foregoing, testimony established that R.C. Bowman did not maintain a specific customer list and Bowman III did not see the customer list entered as Exhibit 11, which identified R.C. Bowman's largest repeat customers and was prepared in anticipation of litigation until this legal action. (*See* N.T. Trial, 10/15/20, at 138-40); (N.T. Trial, 10/16/20, at 139). The only list Bowman III possessed after his employment was the snow removal customer list from 2016-2017, which R.C. Bowman did not enter into evidence and is not mentioned in the trial court's order. (*See* N.T. Trial, 10/15/20, at 31); N.T. Trial, 10/16/20, at 68-69); (Order, 12/04/20, at 2). As agreed by Rob Bowman, R.C. Bowman did not require Bowman III to execute a contract containing a covenant about confidentiality terms or not to compete. (*See* Joint Statement of Uncontested Facts, at Paragraph 25). The employee handbook confidentiality provision contains boilerplate terms that do not identify what information is deemed confidential, and the other employees of R.C. Bowman were not subject to contracts with confidentiality provisions. (*See* N.T. Trial, 10/15/20, at 61-62, 140-42); (N.T. Trial, 10/16/20, at 23-24, 151-52). R.C. Bowman itself entered Exhibit 11 into evidence without seeking any protective orders from the trial court, making the list publicly available to the public, including its competitors. (*See* N.T. Preliminary Hearing, 1/15/20, at 25-26, 32-33); (N.T. Trial, 10/15/20, 42-43).

Against this factual backdrop as found by the trial court and our review of the record, we are constrained to conclude that the trial court erred in finding that R.C. Bowman met its burden to prove that the customers identified in Exhibit 11 were a trade secret as a matter of law where it was prepared in anticipation of litigation, did not represent permanent and exclusive relationships between the customers and R.C. Bowman, the corporation took few if any efforts to keep any of its customers confidential, and failed to provide proof of the list's value.[8]  *See Roth*, *supra* at 429–30; *Advanced Computer Applications, Inc.*, *supra* at 1012–13.

_____

[8] We note that R.C. Bowman does not address Exhibit 11 or explain why the court properly found it was a trade secret, other than offering two case citations where customer lists were found to be trade secrets under the specific circumstances.  Its argument primarily hinges on a theory that all the information on the computer constitutes a trade secret despite the court's finding to the contrary and cases that are factually distinguishable.  (*See* R.C. Bowman's Brief, at 13-16).

Furthermore, although we agree with R.C. Bowman that an officer has a fiduciary duty to a corporation, the trial court denied the fiduciary duty claim on the basis that it was preempted by the Trade Secrets Act, and R.C. Bowman did not appeal that denial.  Moreover, an argument about duty does not go to whether the customer list was a trade secret, but whether Bowman III misappropriated it.  *See* 23 Pa.C.S. § 5302 (misappropriation defined in part, as "disclosure or use of a trade secret of another without express or implied consent by a person who … at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret … was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use[.]").  Since we conclude that legally, the Exhibit 11 customer list and the corporation's customers could not be a trade secret under the circumstances of this case, they could not be misappropriated in violation of the PUTSA.  *See Advanced Computer Applications, Inc.*, *supra* at 1012–13.

- 19 -

**B.**

Bowman III next argues that "the trial court erred in finding that [he], a shareholder of R.C. Bowman, was not entitled to inspect R.C. Bowman's books and records despite providing a proper purpose under 15 [Pa.]C.S. § 1508." (Bowman III's Brief, at 40) (unnecessary capitalization and emphasis omitted). R.C. Bowman responds that as a shareholder, Bowman III already receives significant financial information and R.C. Bowman is entitled to protect its confidential financial information under the circumstances of this case. (*See* R.C. Bowman's Brief, at 20-24).

Section 1508 of the Business Corporation Law provides, in pertinent part:

> **(b) Right of inspection by a shareholder.**—Every shareholder shall, upon written verified demand stating the purpose thereof, have a right to examine, in person or by agent or attorney, during the usual hours for business for any proper purpose, the share register, books and records of account, and records of the proceedings of the incorporators, shareholders and directors and to make copies or extracts therefrom. A proper purpose shall mean a purpose reasonably related to the interest of the person as a shareholder. … The demand shall be directed to the corporation:
>
> > (1) at its registered office in this Commonwealth;
> >
> > (2) at its principal place of business wherever situated; or
> >
> > (3) in care of the person in charge of an actual business office of the corporation.
>
> **(c) Proceedings for the enforcement of inspection by a shareholder.**—If the corporation, or an officer or agent thereof, refuses to permit an inspection sought by a shareholder … pursuant to subsection (b) …, the shareholder may apply to the

- 20 -

court for an order to compel the inspection. The court shall determine whether or not the person seeking inspection is entitled to the inspection sought. … Where the shareholder seeks to inspect the books and records of the corporation, other than its share register or list of shareholders, he shall first establish:

(1) That he has complied with the provisions of this section respecting the form and manner of making demand for inspection of the document.

**(2) That the inspection he seeks is for a proper purpose**.

**Where the shareholder seeks to inspect the share register or list of shareholders** of the corporation and he has complied with the provisions of this section respecting the form and manner of making demand for inspection of the documents, **the burden of proof shall be upon the corporation to establish that the inspection he seeks is for an improper purpose.**

15 Pa.C.S. § 1508(b), (c) (emphases added).

"[W]hether a stockholder has set forth a 'proper purpose' to inspect corporate records is a determination which must be made on a case-by-case basis following a careful consideration of the surrounding circumstances of the document inspection request." *Zerbey v. Z.H. Zerbey Newspapers, Inc.*, 560 A.2d 191, 198 (Pa. Super. 1989).

In this case, Bowman III, as a shareholder of R.C. Bowman, sent a series of letters to R.C. Bowman requesting access to the corporation's records. (*See* Corporate Records Complaint, at Exhibits C, E, G). When R.C. Bowman denied these requests after Bowman III provided further information explaining why he believed he was entitled to inspection, he filed his action in

the trial court to compel the corporation to allow inspection.[9]  ***See*** 15 Pa.C.S. § 1508(b), (c).

Bowman III sought to inspect the corporation's monthly accounts receivable, monthly accounts payable, work backlog report, copies of all checks written from Bowman, Inc.'s accounts, sales agreements for all assets sold and proof of payment for same, all cash receipts and deposits, all credit card statements, complete payroll reports and a detailed Verizon phone bill. (***See*** Corporate Records Complaint, at 6, Exhibits C, E, G).  He demanded he be allowed to inspect the above financial records because he was concerned about individuals in management positions leaving, sizeable raises being given, a lack of current business, and Rob Bowman paying his personal expenses through the corporation.  (***See id.***).

The trial court found that "Bowman III has not offered credible evidence that R.C. Bowman, Inc. is floundering or experiencing managerial difficulties." However, it did conclude that Bowman III's claim that Rob Bowman is paying his personal expenses through the corporation established a proper purpose. (Trial Ct. Op., 8); (***see id.*** at 6-7).  However, just because expenditures are

_____

[9] The trial court commented that it is reluctant to grant Bowman III access to the records because he did not make a formal request for them at a shareholders' meeting. (***See*** Trial Ct. Op., at 8-9).  However, Section 1508(b) only requires that he direct his request to the corporation, not to the shareholders at a meeting.  ***See*** 15 Pa.C.S. § 1508(b).  Accordingly, he satisfied the demand requirement of Section 1508(b).

not being used for improper purposes, that is not the proper standard for determining denying access to the corporate records.

Bowman III met his *prima facie* burden pursuant to Section 1508(c) that he was entitled to see the records by making a written demand of the corporation and then establishing a proper purpose, in this case, improper expenditures. Because he did not seek access to the share register or list of shareholders of the corporation, this is where the inquiry should have ended, and the court improperly shifted the burden to R.C. Bowman to then establish an improper purpose. **See** 15 Pa.C.S. § 1508(b), (c); **see also Shaw v. Hurst**, 582 A.2d 87, 89 (Pa. Cmwlth. 1990)[10] (trial court erred in denying access to corporate records where it concluded requestor had proper purpose); (Trial Ct. Op., at 7) ("[A] shareholder's right to inspect corporate books cannot be denied on the ground that it might supply knowledge of corporate business to competitor.")[11] (citing **Stuart v. Sterling Lumber Co.**, 78 Pa. D.&C. 86 (Delaware Cty. CCP 1952)); **see also Hodder v. George**

_____

[10] "This Court is not bound by decisions of the Commonwealth Court. However, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate." **Petow v. Warehime**, 996 A.2d 1083, 1089 n.1 (Pa. Super. 2010), *appeal denied*, 12 A.3d 371 (Pa. 2010).

[11] Although **Hurst** applied Section 5508 of the Business Corporation Law, which applies to non-profit corporations and requests by members to inspect corporate records, the pertinent language is identical, and we find its reasoning pertinent.

***Hogg Co.***, 72 A. 553, 554 (Pa. 1909) (shareholder wishing to ascertain if business properly conducted has right to inspect books even if there is competitor interest). Hence, we are constrained to reverse the Judgment on the Corporate Records Action.[12]

However, the trial court only found that a proper purpose was established by Bowman III's concern that the corporation improperly paid Rob Bowman's personal expenses, not to the remainder of the claims that went to the alleged mismanagement of the corporation. Which of the requested records are reasonably related to that narrow proper purpose is a fact question for the trial court. Accordingly, on remand, we direct the court to conduct whatever proceedings it deems necessary for it to determine which of the requested documents go to this narrow issue and should be produced for inspection. Furthermore, we are aware of the contentious nature of this litigation and R.C. Bowman's concerns about the production of confidential financial materials to an individual with a competitive interest. Hence, to protect the interest of all shareholders, we also direct the court to determine

---

[12] Although the court declined to compel R.C. Bowman to allow inspection because Rob Bowman "sufficiently answered the allegations," Bowman III is "not bound to accept the statements and opinions of the officers of [R.C. Bowman], made under oath or otherwise. [He has] a right to make a personal inspection of the records and form [his own opinion.]" (Trial Ct. Op., at 8); ***Zerbey v. J.H. Zerbey Newspapers, Inc.***, 560 A.2d 191, 199 (Pa. Super. 1989).

whether the order should include a directive that such documents be provided only after Bowman III has signed a non-disclosure and non-use agreement.

In summary, we conclude that the trial court erred in entering judgment in favor of R.C. Bowman, Inc. in the Trade Secrets Action and Corporate Records Action. We reverse the judgment at case numbers 1576-2019 and 1690-2019 and direct the court, on remand, to conduct proceedings consistent with this decision.

Judgments reversed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/14/2022