J-S15001-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: R.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.C., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2406 EDA 2021 |

Appeal from the Order Entered November 17, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0002718-2017

| | | |
|---|---|---|
| IN THE INTEREST OF: R.E.L.-C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.C., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2407 EDA 2021 |

Appeal from the Decree Entered November 17, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000352-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: D.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.C., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2408 EDA 2021 |

Appeal from the Order Entered November 17, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0000108-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: D.M.L.-C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

J-S15001-22

```
                                           :
                                           :
                                           :
    APPEAL OF: R.C., FATHER                :
                                           :
                                           :
                                           :
                                           :
                                           :   No. 2409 EDA 2021
```

Appeal from the Decree Entered November 17, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000353-2019

BEFORE: NICHOLS, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY NICHOLS, J.: **FILED JULY 19, 2022**

Appellant R.C. (Father) appeals from the decrees[1] granting the petitions

filed by the Philadelphia County Department of Human Services (DHS) and

involuntarily terminating his parental rights to his minor children, R.E.L.-C.

(born July 2013) and D.M.L.-C. (born January 2018) (collectively, the

---

[1] Father also appealed from the orders changing the Children's permanency goals from reunification to adoption. **See** Notices of Appeal, 11/22/21. However, on appeal, he does not discuss the permanency goal change in his statement of questions presented on appeal or in his argument section. Accordingly, Father has abandoned this issue for purposes of appeal. **See Allied Envtl. Serv., Inc. v. Roth**, 222 A.3d 422, 424 n.1 (Pa. Super. 2019) (stating that "[a]n issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived" (citation omitted)).

Children).[2,3]  Father argues that the trial court erred in concluding that DHS presented clear and convincing evidence supporting the termination of his parental rights.  We affirm.

The family came to the attention of DHS on October 9, 2017, when DHS received a General Protective Services (GPS) report and three Child Protective Services (CPS) reports regarding R.E.L.-C. and Sibling.  N.T. Term. Hr'g, 10/1/19, at 16; 9/17/21, at 166-68.  The GPS report alleged that Sibling, while in an outpatient psychiatric program, had written a note accusing her stepfather of rape, and further accused her stepfather and mother of abuse.[4]  N.T. Term. Hr'g, 10/1/19, at 117; **also** Goal Change Pet., 5/9/19, Ex. A.  The report further alleged that Father had physically abused Sibling and had a history of sexual violence against another minor female child.  N.T. Term. Hr'g, 9/17/21, at 166-68; **see also** Goal Change Pet., 5/9/19, Ex. A.

---

[2] R.E.L.-C. and D.M.L.-C. are the biological children of Father and V.L. (Mother), and the Children have an older half-sister, R.L. (Sibling), who is Mother's biological child and Father's stepchild.  **See** Trial Ct. Op., 1/23/22, at 1; Goal Change Pet., 5/9/19, Ex. A; N.T. Term. Hr'g, 10/1/19, at 11-12, 9/17/21, at 56-57.  Sibling has a separate dependency matter and is not a subject of the instant appeal.  N.T. Term. Hr'g, 10/1/19, at 11-12, 134.  Sibling is in the permanent legal custody of another caretaker.  **Id.**

[3] Mother's parental rights to the Children were terminated on the same date. Mother filed separate appeals from the goal change orders and the termination decrees, which we will address in a separate memorandum.

[4] Mother later informed Dr. Erica Williams, a forensic evaluator, that "stepdad" referred to another former paramour of Mother's, not Father.  N.T. Term. Hr'g, 10/1/19, at 116-18; 9/17/21, at 62-63.

The CPS reports alleged that Father was registered as a Tier III sex offender under the Sex Offender Registration and Notification Act (SORNA)[5,6] and that despite being aware of his status, Mother left Sibling unsupervised in Father's care. N.T. Term. Hr'g, 9/17/21, at 166-68; *see also* Goal Change Pet., 5/9/19, Ex. A. Following a DHS investigation, both Mother and Father were indicated. *Id.*

The second CPS report alleged that Mother permitted a family friend to reside in the home and spend time alone with Sibling despite the fact that he was a convicted sex offender. *See* Goal Change Pet., 5/9/19, Ex. A. The third CPS report alleged that Mother left R.E.L.-C. unsupervised in the care of that family friend. *Id.* Mother admitted to the allegations in both the second and third CPS reports, and they were indicated as to Mother. *Id.*

During the course of their investigation, DHS interviewed both Mother and Father. Mother admitted that her former paramour molested her oldest adult child and that she left Sibling unsupervised at home with Father while she was at work. *See* Goal Change Pet., 5/9/19, Ex. A. Father admitted that he was a registered sex offender and agreed to stay at a separate location during the DHS investigation. *Id.*

---

[5] 42 Pa.C.S. §§ 9799.10-9799.42.

[6] The record reflects that Father was convicted of indecent assault, indecent assault – complainant less than thirteen years of age, unlawful contact with a minor, and sexual assault. *See* 18 Pa.C.S. §§ 3126(a)(1), 3126(a)(7), 6318, and 3124.1, respectively. As a result, he was subject to lifetime registration under SORNA.

- 4 -

DHS met with Sibling and both parents on October 11, 2017. ***See*** Goal Change Pet., 5/9/19, Ex. A. Mother admitted that she was aware of Father's prior convictions, but she denied the allegations of domestic violence. ***Id.*** Sibling stated that she and R.E.L.-C. were left alone with Father. ***Id.*** Father informed DHS that Mother permitted Sibling to go to the home of her former paramour who had molested Mother's eldest child. ***Id.*** Father admitted that he failed to inform the Pennsylvania State Police that Sibling lived in the home in which Father had registered his residency in accordance with SORNA. ***See*** Goal Change Pet., 5/9/19, Ex. A. He claimed he "did not know" the conditions of being a registered sex offender. ***See*** Goal Change Pet., 5/9/19, Ex. A.

That same day, DHS obtained orders of protective custody (OPC) for R.E.L.-C. and Sibling and placed them in the care of their maternal grandmother. ***Id.*** The trial court adjudicated R.E.L.-C. and Sibling dependent on October 20, 2017. ***See*** Order of Adjudication, 10/20/17, at 1-2; Goal Change Pet., 5/9/19, Ex. A. The trial court found aggravated circumstances as to Father and ordered that no reasonable efforts were to be made to reunify R.E.L.-C. and Father. ***See*** Aggravated Circumstances Order, 10/20/17, at 1-2. The trial court suspended Father's visitation with both R.E.L.-C. and Sibling and issued a stay-away order as to Sibling. ***See*** Order of Adjudication, 10/20/17, at 1-2. The court referred R.E.L.-C. for early intervention services and a psychological evaluation. ***Id.*** On October 27, 2017, R.E.L.-C. and Sibling were placed in kinship care with their maternal aunt, C.L. (Maternal Aunt). ***See*** Goal Change Pet., 5/9/19, Ex. A.

On November 8, 2017, DHS received a supplemental CPS report alleging that another note had been found in Sibling's diary stating that she had been sexually abused. **See** Goal Change Pet., 5/9/19, Ex. A. Sibling's family stated that they believed that Sibling had been sexually abused by Mother's former paramour, that Mother had a history of entering into cohabitating relationships with registered sex offenders and perpetrators of sexual abuse, that Mother's eldest child had also been sexually abused, and that Mother had exposed Sibling to three or four separate sex offenders. **Id.**

On November 9, 2017, the Community Umbrella Agency (CUA) held a single case plan meeting (SCP) to establish SCP objectives for Mother and Father. **See** Goal Change Pet., 5/9/19, Ex. A. Father was to complete sex offender services through the Joseph J. Peters Institute (JJPI) and comply with all court orders. **Id.**

In January 2018, Mother gave birth to D.M.L.-C. **See** Goal Change Pet., 5/9/19, Ex. A. On January 12, 2018, the trial court held a permanency review hearing and ordered DHS to obtain an OPC and place D.M.L.-C. in care. **See** Perm. Rev. Order, 1/12/18, at 1. Father was permitted to have supervised visitation with the Children and ordered to complete a parenting capacity evaluation (PCE). **Id.** DHS obtained the OPC on January 15, 2018, and placed D.M.L.-C. with R.E.L.-C. and Sibling in the care of their maternal aunt. **See** Goal Change Pet., 5/9/19, Ex. A.

On January 24, 2018, the trial court adjudicated D.M.L.-C. dependent. **See** Adjudication of Dependency, 1/24/18, at 1-2. The trial court ordered a

second SCP to address Father's visitation and to obtain further information regarding his sex offender registration. *See* Goal Change Pet., 5/9/19, Ex. A. If appropriate, the trial court indicated that it would allow Father line-of-sight, line-of-hearing, supervised visitation at DHS. *Id.*

On April 6, 2018, the trial court held a permanency review hearing and noted that Father had been allowed supervised visitation with the Children. *See* Perm. Rev. Order, 4/6/18, at 1-2. On May 16, 2018, CUA held the SCP meeting. *See* Goal Change Pet., 5/9/19, Ex. A. The Children's goals were identified as reunification with concurrent goals of placement with a relative. *Id.* Both parents' objectives remained the same. *Id.* On June 26, 2018, the trial court held a permanency review hearing and determined that Father was substantially compliant with his permanency plan, but aggravated circumstances still existed in D.M.L.-C.'s case. *See* Perm. Rev. Order, 6/26/18, at 1-2.

On November 8, 2018, the trial court held a permanency review hearing and found that Father was substantially compliant with his permanency plan. *See* Perm. Rev. Order, 11/8/18, at 1-3. Specifically, the court noted that Father had completed his PCE and was awaiting the written PCE report with recommendations. *Id.* The trial court ordered Father to sign releases for his psychiatric records and to provide written confirmation of employment in addition to correspondence from the owner of his residence authorizing CUA to conduct a home assessment and clearances. *Id.*

In November 2018, Erica Williams, Psy.D., and Samantha Peterson, MA, completed the PCE report. N.T. Term. Hr'g, 10/1/19, at 76-104. Dr. Williams diagnosed Father with pedophilic disorder and noted that Father admitted to having a long-standing attraction to female children. *Id.* Although Father reported that he was attending treatment, he did not provide records of his treatment. *Id.* Father was dismissive of safety concerns and his own risk of harm to Sibling. *Id.* The report concluded that Father did not have the ability to provide safety and/or permanency to either the Children or to Sibling. *Id.*

On January 17, 2019, the trial court held a permanency review hearing and determined that Father was moderately compliant with his permanency plan. Perm. Rev. Order, 1/17/19, at 1-2. Father's visitation was modified to weekly supervised visits, and Sibling was not to attend. *Id.* The trial court stated that Father could either provide CUA with all treatment plans and mental health records or that the trial court would refer him to Behavioral Health Services (BHS) for consultations and evaluations. *Id.* Additionally, the trial court ordered Father to remain up to date with his SORNA registration requirements and referred him to the Clinical Evaluation Unit (CEU) for drug screens. *Id.*

On February 14, 2019, CUA revised the SCP. *See* Goal Change Pet., 5/9/19, Ex. A. At that time, the Children's primary goal was identified as adoption, with a concurrent goal of reunification. *Id.* Father's objectives were as follows: comply with his visitation, sign all releases necessary for case management, comply with the no-contact order as to Sibling, comply with his

drug screens, comply with his PCE and subsequent recommendations, provide progress reports from his therapist, attend psychotherapy, provide CUA with his address and comply with a home inspection, provide a letter documenting his residence and utilities. *Id.*

On May 8, 2019, DHS filed petitions to change the Children's permanency goal to adoption and seeking involuntary termination of Father's parental rights to the Children pursuant to Section 2511(a)(2), (a)(5), (a)(8), (a)(11), and (b). *See* Pet. for Involuntary Term., 5/9/19, at1-7; Pet. for Goal Change, 5/9/19, at 1-7, Ex. A.

The petitions detailed Father's criminal history, convictions, and status as a Tier III sex offender registration. DHS averred that, pursuant to Child Protective Services Law B.1 § vii, Father was not permitted to be around children under the age of eighteen while unsupervised. DHS also noted that at that time, R.E.L.-C. had been in care approximately nineteen months and D.M.L.-C. had been in care approximately sixteen months.

The trial court conducted evidentiary hearings on October 1, 2019, September 17, 2021, and November 17, 2021.[7,8] DHS presented testimony from forensic evaluator Dr. Erica Williams, CUA permanency worker Allison Serge, CUA case supervisor Andrew Lemon, CUA case manager Tarnjif Kaur, and Mother. Father presented testimony from his therapist, Dean Dickson.

At the conclusion of the hearings, the trial court terminated Father's parental rights to the Children pursuant to Section 2511(a)(2), (a)(5), (a)(8), (a)(11), and (b),[9] and changed the Children's permanency goals to adoption.

_____

[7] At the first hearing on October 1, 2019, the court heard evidence from two witnesses. N.T. Term. Hr'g, 10/1/19, at 2-174. At the subsequent hearing on November 6, 2019, Mother's first attorney asked the trial court to vacate his appointment due to a conflict with Mother. N.T. Term. Hr'g, 11/6/19, at 3. The trial court granted the request and continued the hearing on counsel's behalf. *Id.* at 5. Although the evidentiary hearings were postponed multiple times during the COVID-19 pandemic, the trial court held regular status review and permanency hearings.

[8] Meredith Marie Rogers, Esq. served as the Children's guardian *ad litem* throughout the proceedings. Attorney Rogers argued that terminating Mother's parental rights was in the Children's best interests. N.T. Term. Hr'g, 11/17/21, at 108-09. Mario D'Adamo III, Esq., served as the Children's legal counsel during the termination proceedings, and appeared at the hearing on their behalf. *Id.*; *see also In re Adoption of K.M.G.*, 240 A.3d 1218 (Pa. 2020). Attorney Adamo testified that he met with the Children on three separate occasions, and that at his latest visit, R.E.L.-C. and D.M.L.-C. appeared well-bonded with their caregiver (the Children's Maternal Aunt) and viewed her as a maternal figure. N.T. Term. Hr'g, 11/17/21, at 96.

[9] DHS filed the petitions to involuntarily terminate Father's parental rights pursuant to Sections 2511(a)(2), (a)(5), (a)(8), (a)(11), and (b). At the conclusion of the termination hearing, the trial court explicitly terminated Father's rights pursuant to Section 2511(a)(2), (a)(5), (a)(8) and (b). The following exchange took place:
*(Footnote Continued Next Page)*

Father timely appealed and simultaneously filed concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). The trial court issued a Rule 1925(a) opinion addressing Father's claims.

On appeal, Father raises the following issues for our review:

_____

[COUNSEL FOR DHS]: Did the [c]ourt—

THE COURT: Act 10—

[COUNSEL FOR DHS]: --[make] a finding as to [F]ather as to 2511(a)(11). That was the additional ground, because – parent is required –

THE COURT: Did you actually—

[COUNSEL FOR DHS]: To register as a sex offender.

THE COURT: -- file that in the petition?

[COUNSEL FOR DHS]: Yes.

THE COURT: Okay. So, that would be (a)(11)?

[COUNSEL FOR DHS]: Yes, Your Honor.

THE COURT: Okay. And the Act 101 notice is to be provided to the parents . . . .

N.T. Term. Hr'g, 11/17/21, at 120-21. Although the decree terminates Father's rights pursuant to Sections (a)(2), (a)(5), (a)(8), and (b), it also addresses Father's SORNA registration requirements and notes that further evidentiary findings were placed upon the record. Father, DHS, and the trial court discuss their analysis pursuant to Section 2511(a)(11) and Father challenged the trial court's determination concerning Section 2511(a)(11) in his Pa.R.A.P. 1925(b) statement of errors complained of on appeal. On this record, it is apparent that the trial court included Section 2511(a)(11) in its termination of Father's parental rights and that all parties had notice thereof. As noted herein, we may affirm based on any subsection of 2511(a). **In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Father] pursuant to 23 Pa.C.S. § 2511(a)(2) where Father presented evidence that he has remedied his situation by maintaining housing, working, and mental health counseling, and has the present capacity to care for [the C]hildren?

2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Father] pursuant to 23 Pa.C.S. § 2511(a)(5) where evidence was provided to establish that [the Children were] removed from the care of [Father] and Father is now capable of caring for [the C]hildren?

3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Father] pursuant to 23 Pa.C.S. § 2511(a)(8) where evidence was presented to show that Father is now capable of caring for [the C]hildren after he completed his parenting capacity evaluation, secured and maintained housing and employment, and continues in his mental health treatment programs?

4. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Father] pursuant to 23 Pa.C.S. § 2511(a)(11) where evidence was presented to show that Father does not have any restrictions on unsupervised contact with his children and continues in his mental health treatment program?

5. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Father] pursuant to 23 Pa.C.S. § 2511(b) where evidence was presented that established the Children had a close bond with their father and they had lived with their father for the first part of their lives. Additionally, Father maintained that bond by visiting with his children.

Father's Brief at 7 (formatting altered).

We begin by stating our standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law

or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations omitted and formatting altered). "[T]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re Q.R.D.*, 214 A.3d 233, 239 (Pa. Super. 2019) (citation omitted).

The burden is on the petitioner "to prove by clear and convincing evidence that [the] asserted grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis

- 13 -

concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). We note that we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm an order terminating parental rights. *B.L.W.*, 843 A.2d at 384.

## Section 2511(a)(11)

Father argues that the trial court erred in terminating his parental rights under Section 2511(a)(11) based on the fact that he is a registered sex offender. Father's Brief at 18. Father asserts that "while termination under this subsection is discretionary, it is not warranted in this case" because Father has "completed his probation and has had no other arrests of any kind." *Id.* Father also claims that he "is permitted to have unsupervised contact with children, including his own children" and that he "is not a risk for re-offense." *Id.* at 18-19. Father asserts that at the time of his arrest, he had been living with his children and was "an appropriate father" to them. Finally, he claims that the case arose from "allegations of an older sibling which had nothing to do with Father." *Id.* at 19.

Section 2511(a)(11) provides, in relevant part, as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(11) The parent is required to register as a sexual offender under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders) or I (relating to continued registration of sexual offenders)[fn1] or to register with a sexual offender registry in another jurisdiction or foreign country.

[fn1] 42 Pa.C.S. §§ 9799.10 et seq., 9799.51 et seq.

23 Pa.C.S. § 2511(a)(11).

The language of the statute provides that, when the parent is required to register as a sexual offender, the court **may** terminate the parent's rights. *See id.* Therefore, when that condition is met, the court's decision on termination is discretionary. *See Lorino v. Workers' Comp. Appeal Bd.*, 266 A.3d 487, 493 (Pa. 2021) (noting that the term "may" connote an act that is permissive, but not required). Additionally, Section 2511(a)(11) does not mandate further inquiry into the parents' actions. The sole condition is that the parent is required to register as a sexual offender under SORNA. 23 Pa.C.S. § 2511(a)(11). *See*, *e.g.*, *Interest of Z.F.G.*, 684 WDA 2021, 2022 WL 34288, at *3 (Pa. Super. filed Jan. 4, 2022) (unpublished mem.)[10] (concluding that termination was appropriate because the evidence established that the father was a registered sex offender and stating that the father could not challenge the validity of the underlying convictions and registrations in the termination proceeding).

Here, the trial court observed:

---

[10] *See* Pa.R.A.P. 126(b) (authorizing citation of non-precedential decisions of this Court filed after May 1, 2019 for their persuasive value only).

- 15 -

It is undisputed that Father is required to register as a sexual offender under [SORNA]. Indeed, Father's own exhibit is his [Federal Bureau of Investigation (FBI)] background check information including his criminal record. Father's Exhibit 1 lists convictions for unlawful contact with minors, indecent assault, and corruption of minors, resulting from a guilty plea. The Exhibit also explains that Father is a lifetime registrant, with the registry expiration date listed as "nonexp," or no expiration. DHS Exhibit 3 and Child Advocate Exhibit 2 are both Father's [SORNA] registry. DHS Exhibit 9 includes criminal court documentation signed by Father acknowledging his reporting requirements under 42 Pa.C.S. Ch. 97, as well as the criminal complaint initiating his case with an affidavit of probable cause describing Father's confession. Father himself reported to Dr. Williams during his PCE his status as a [sex] offender. Father has an admitted attraction to underage girls, acknowledged by his own therapist. Even Mother admitted and acknowledged Father's attraction to young girls and the safety concern it presents for [the] Children. Mother specifically stated that "Father is a danger to [her] kids."

Trial Ct. Op., 1/23/21, at 23 (citations omitted).

Based on our review of the record, we find no error or abuse of discretion by the trial court in terminating Father's parental rights. *See* 23 Pa.C.S. § 2511(a)(11). As noted previously, Father's status as a sex offender is a sufficient basis to warrant termination of his parental rights under Section 2511(a)(1). *See* 23 Pa.C.S. § 2511(a)(11). Further, contrary to Father's claims, the record establishes that he is at risk of re-offense, he is not capable of providing safety or permanency to the Children, and he failed to attend appropriate psychotherapy to address his diagnosis for pedophilic disorder because Dr. Dickson's therapy was not adequate for that purpose. N.T. Term. Hr'g, 10/1/19, at 83, 103-04, 110. Dr. Williams, whose testimony the trial court found credible, testified that Father's therapist committed errors,

including administering the Static-99R test incorrectly and failing to rely on additional sources of information, and that those errors were so serious that any data provided by Mr. Dickson was invalid. *Id.* at 24, 48-52, 96-98, 105-107.

For these reasons, we conclude that the trial court did not abuse its discretion by terminating Father's parental rights to the Children under Section 2511(a)(11) and no relief is due.

### Section 2511(b)

Father also argues that the trial court erred in concluding that termination was proper under Section 2511(b). In support, Father argues that the Children lived with him for the first part of their lives and that they had a bond with Father. Father's Brief at 19. Father further asserts that he consistently attended his supervised visits and that his parental bond with the Children continued because of these visits. *Id.* at 19-20. Therefore, Father concludes that the trial court erred in finding that termination was in the Children's best interest. *Id.*

Section 2511(b) states in relevant part:

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. . . .

23 Pa.C.S. § 2511(b).

"[T]he focus in terminating parental rights is on the parent, under Section 2511(a), whereas the focus in Section 2511(b) is on the child." *In re C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (citation omitted).  This Court has explained:

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent.  Additionally, . . . the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (citations omitted and formatting altered).  "Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *T.S.M.*, 71 A.3d at 268 (citation omitted).

"In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists.  The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) (citation omitted).  The question is whether the bond between the parent and the child "is the one worth saving or whether it could be sacrificed without irreparable harm to" the child. *Id.* at 764.  "Section 2511(b) does not require a formal

bonding evaluation" and caseworkers may offer their opinions and evaluations of the bond. ***Z.P.***, 994 A.2d at 1121 (citation omitted).

In weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind. Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail, . . . the result, all too often, is catastrophically maladjusted children." ***T.S.M.***, 71 A.3d at 269. Finally, we reiterate that the court may emphasize the safety needs of the child. ***In re N.A.M.***, 33 A.3d 95, 103 (Pa. Super. 2011).

Here, the trial court explained that although Father consistently visited with the Children, the interactions during those visits were "very minimal." N.T. Hr'g, 9/17/21, at 221-22. While Father plays with the Children, he cannot redirect them, and he spends more time on his phone than he does ensuring that the Children are properly supervised. ***Id.*** Further, rather than turning to Father for comfort when they are scared, hurt, sick or upset, the Children turn to Maternal Aunt. ***Id.*** at 226. The Children do not have any negative reaction when their visits with Father end. ***Id.*** at 214. In contrast, the Children share a positive bond with Maternal Aunt and view her as their primary caregiver. ***Id.*** at 192-195, 227. D.M.L.-C. in particular has a strong parent-child bond with Maternal Aunt. ***Id.*** Additionally, both DHS caseworkers testified that the Children could not be safely returned to Father's custody, that it would not cause irreparable harm to either Child to terminate Father's parental rights, and that adoption was in the Children's best interests.

*Id.* at 223-224. Based on this evidence, the trial court concluded that the Children do not have a healthy parental bond with Father and that it was in the Children's best interests to terminate Father's parental rights. **See** Trial Ct. Op. at 23-26.

Following our review of the record, we discern no abuse of discretion by the trial court. **See T.S.M.**, 71 A.3d at 267. The record supports the trial court's conclusion that there was no beneficial bond between the Children and Father, that Maternal Aunt fulfills a parental role for the Children, and that there would be no irreparable harm to either Child if Father's parental rights were terminated. **See K.Z.S.**, 946 A.2d at 764. Likewise, the record supports the trial court's determination that the termination of Father's parental rights served the best interests of the Children. **See C.L.G.**, 956 A.2d at 1009-10. Therefore, Father is not entitled to relief.

For these reasons, we conclude that the trial court did not abuse its discretion in terminating Father's parental rights to the Children. **See T.S.M.**, 71 A.3d at 267. Accordingly, we affirm.

Orders and decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/19/2022